ABRAHAM MUSICK

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. CHALLENGING GRAND JURORS—*practice governed by the common law.* In this State, the common law governs as to the time, manner or causes for which grand jurors may be challenged.

2. SAME—*of the right of challenge, and by whom.* The common law practice is, that grand jurors may be challenged for cause, and if the party waives the right to challenge the array, or if no cause exists for such challenge, any per-son charged with crime, and which is likely to come before that body for

Statement of the case.

action, has the right to challenge any person as a grand juror for any sufficient cause.

3. SAME—*ground of challenge.* The court are inclined to the opinion, that under the practice in this State, the expression of an opinion by a grand juror, that the accused was guilty, forms no ground of challenge.

4. SAME—*time within which challenge must be made.* But even if such an expression of opinion were ground of challenge, the objection should be taken, as in the case of a petit juror, before the grand juror has taken the oath.

5. PETIT JURORS—*competency.* The fact that a petit juror belongs to an association whose object is to detect crime, is no disqualification.

6. LARCENY OF HORSES, ETC., *when committed prior to act of* 1865, *under what law punished—repeal of statutes.* The act of February 15, 1865, amendatory of the sixty-second section of the chapter in the Revised Statutes, entitled "Criminal Jurisprudence," and increasing the punishment of persons convicted " of the larceny of any horse, mare, colt, mule or ass," did not operate to repeal the law thus amended.

7. So that where a person was indicted for the larceny of a horse before the passage of the act of 1865, it was *held*, that he could be legally tried and convicted after the passage of that act, and would be punished under the law as it stood before it was amended.

8. SAME—*construction of act of* 1865. The amendatory act of 1865, does not operate upon offenses committed prior to its passage.

WRIT OF ERROR to the Circuit Court of McLean county; the Hon. JOHN. M. SCOTT, Judge, presiding:

On the 10th day of April, 1863, an indictment was returned into the Circuit Court of Logan county, against Abraham Musick, charging him with the larceny of a horse.

Subsequently, the cause was removed, upon change of venue, into the Circuit Court of McLean county, where a trial was had at the December Term, 1865, resulting in a verdict of guilty. A new trial was granted, and upon a second trial, at the March Term, 1866, the defendant was again found guilty. A second application for a new trial was refused, and the prisoner was sentenced to imprisonment in the penitentiary for one year, the term fixed by the verdict of the jury. The cause is brought to this court upon writ of error. Other proceedings in the cause, upon which the assignment of errors is principally based, appear in the opinion of the court.

Messrs. Williams & Burr, for the plaintiff in error.

Mr. C. Blanchard, State's Attorney, for the people.

Mr. Chief Justice Walker delivered the opinion of the Court:

This was a prosecution for larceny. This record discloses the fact that plaintiff in error, had been recognized for his appearance at the Circuit Court, and was in attendance according to the exigencies of his recognizance. That on the opening of the court below, on the morning of the fifth day of the term to which the recognizance was returnable, the attorney of plaintiff in error entered a motion to have the grand jury brought to the bar of the court for the purpose of having it purged of members who, it was alleged, had, before hearing the evidence, expressed the opinion that accused was guilty of the charge. That the attention of the court was afterward called to the motion, but, being otherwise engaged, it was not then taken up; and before a hearing was had the grand jury came into court for the purpose of making presentments, and after they were polled, the motion was called up and after arguments were heard, the court inquired of the foreman whether the grand jury had acted in the case, and was informed they had and were ready to report a bill, and thereupon the court overruled the motion, to which exceptions were taken.

Our statute has made no provision in regard to the time, manner or causes for which grand jurors may be challenged. In this respect the practice obtains as it was at the common law. We have therefore to look to that source for the rules governing such cases. By a reference to authorities it will be seen, that this question has been seldom presented to courts for determination. But the authorities all agree, that grand jurors may be challenged for cause, as well as petit jurors. The practice is, that if the party waives the right to challenge the array, or if no cause exists for such challenge, any person charged with crime, and which is likely to come before that body for

action, has the right to challenge any person returned as a grand juror, for any sufficient cause.

But the time when this right must be exercised, is, perhaps, not quite so well settled. A careful examination of the adjudged cases and the general rules of practice applicable to the challenge, does not seem to remove all difficulty in determining this question. At the common law the practice seems to be, that if a disqualified person was returned as a grand juror, as, if he were an alien, a villein, or one convicted of crime, any person under prosecution in the court, before he is indicted may challenge such persons, or other persons returned at the request of the prosecution, or persons not returned by the proper officers. 2 Hawk. Pl. C. 295, ch. 25, sec. 16; 3 Bac. Abr. 725, Tit. Juries A.; 2 Burn's Just. 694. But we have not been able to find that the courts of Great Britain have ever allowed the expression of the opinion by a grand juror that the prisoner was guilty, to be ground of challenge.

But in this country the current of authorities seems to be in favor of allowing it to be sufficient ground of challenge. In New York, previous to the statute on the subject, such was allowed to be a good exception before indictment found. *People* v. *Jewett*, 3 Wend. 314. And the same was held in Pennsylvania. *Commonwealth* v. *Clark*, 2 Browne, 235. And in Indiana, it was *held*, that exceptions may be taken to the qualification of a grand juror at any time before the indictment is found. *Janes* v. *The State*, 2 Blackf. 477. But in Massachusetts, in the case of *Commonwealth* v. *Tucker*, 8 Mass. 286, it was *held*, that it was not cause of challenge to a grand juror that he had originated the prosecution. In this case the objection was taken before the juror was sworn, but it was disallowed and the juror sworn. In Alabama, in the case of *The State* v. *Clarissa*, 11 Ala. 57, it was *held*, that the grand jury connot be required to expurgate themselves of any supposed interest or bias at the instance of one in jail, expecting to be indicted; but it is there *held*, that the objection must be taken by plea in abatement of the indictment.

When it is remembered, that under our practice an indictment may be preferred on the information of any two members of the grand jury without being sworn as witnesses, or on the oath of one only, we cannot see how they could be challenged for having formed and expressed an opinion of the prisoner's guilt. If that could be done, then, under our practice, the accused could, by challenge of such jurors, prevent a finding in that mode, as the jurors having knowledge of facts sufficient to warrant an indictment, would certainly entertain the belief of his guilt. We are rather inclined to the opinion, that this forms no ground of a challenge to a grand juror; but if it does, the objection should be taken, as in the case of a petit juror, before he has taken the oath. *State* v. *Rickey*, 5 Halsted, 83. Otherwise great inconvenience and delay, if not an obstruction to the administration of justice, might ensue. And such was the rule adopted in the trial of Colonel Burr, but the exception in that case was to the manner in which the jury had been selected, and illustrates the practice in such proceedings.

It is also urged as a ground of reversal, that a number of the petit jurors belonged to an association organized for the purpose of detecting and prosecuting horse thieves. Plaintiff challenged them for that cause, but the court refused to allow the exception. All persons have the right to be tried by a fair and impartial jury, and the mind of each of its members should be free from bias or prejudice. But does the fact that persons belong to an association whose object is to detect crime, raise a presumption that they are prejudiced against a person charged with a criminal offense; or that they would not be able to give him a fair and impartial trial? We think that it raises no such presumption.

In one sense, all persons living under a civilized form of government are members of such an association. The very object of all government is to protect individuals in their rights, and to punish persons who invade such rights. And every citizen who pays a tax contributes money to aid in convicting persons guilty of crime; and all persons are liable to be compelled to

devote time to effect the same end. It is for this that jurors and witnesses are required to attend courts of justice. One juror admitted that he was prejudiced against persons guilty of stealing horses, but not more so than against persons who committed other crimes. In making this admission, we do not perceive that he differs from other honest men, and we think that these facts did not disqualify him from serving on the jury. Had he stated that he believed accused was guilty, or that he entertained a prejudice against him, it would have been otherwise. There was no error in allowing the juror to sit in the case.

Nor can we say that the evidence fails to sustain the verdict. It has been submitted to two juries with a similar result. And, from an attentive examination of all the evidence in the case, we believe that, if the case were submitted to still another, the finding would not be changed, if they should regard its weight. We are of the opinion that it warranted the verdict, and that the court below committed no error in overruling the motion for a new trial.

It is likewise insisted that the conviction is without law; that the larceny, if committed at all, was in June, 1860; that the punishment for the crime of which plaintiff in error was convicted was not less than one nor more than ten years' confinement in the penitentiary by the law then in force; that the act of 1865 altered the punishment and increased it, without any saving clause, as to offenses committed before the passage of that law, which fixed the time at not less than three nor more than twenty years. It is urged that the latter act operated as a repeal of the former, and hence there was no law in force for the punishment of this offense, even if plaintiff in error was guilty.

The act of 1865 does not, in terms, purport to repeal the former law. Nor does it purport to operate upon offenses already committed. Nor do we think a fair interpretation of its provisions can be held to have that effect; but it operated upon subsequent offenses. And inasmuch as the accused was only convicted and sentenced to one year's confinement in the peni-

tentiary, it is manifest that he was tried under the old law. He cannot therefore complain. Had his sentence been for a longer period than that fixed by the Criminal Code of 1845, then the conviction would have been wrong. Or had the act of 1865 repealed the former law, the judgment would have been equally erroneous; but we think it was repealed neither in terms nor by implication.

The judgment of the court below is affirmed.

*Judgment affirmed.*